FILED

2023 Jun-27  PM 12:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TODD TRUCKS et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | **Case No.:  2:22-cv-01414-RDP** |
| } | |
| **CITY OF ONEONTA, et al.** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendants City of Oneonta ("Oneonta"), City of Oneonta Police Department Chief Charles Clifton ("Chief Clifton"), City of Oneonta Police Department Officer Spencer Self ("Officer Self"), and City of Oneonta Police Department Sergeant Steven Adamson's ("Sergeant Adamson") (collectively, "Defendants") Motion for Summary Judgment. (Doc. # 13). The Motion has been fully briefed. (Docs. # 14, 18, 19). After careful review, and for the reasons outlined below, Defendants' Motion is due to be granted in part.

## I.    Background[1]

At about 5:20 A.M. on November 6, 2020, Plaintiff Todd Trucks was sitting in his tree stand bow hunting. (Doc. # 2 ¶¶ 8-10). His truck was parked in the circle at the end of a cul-de-sac. (*Id.*). Plaintiff noticed Chief Clifton pull up behind his truck and start looking around in the

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

truck's bed. (*Id*.). Clifton then walked over to an adjacent home, where he was soon joined by Officer Self, and knocked on the door. (*Id*. ¶¶ 11-12). The two officers waited for several minutes, but no one answered the door. (*Id*.). Officer Self then walked back to Plaintiff's truck. (*Id*.). Plaintiff climbed down from the tree stand to approach Officer Self. (*Id*.).

As they were walking back to the truck, Officer Self noticed Plaintiff coming out of the woods. (Doc. # 14-1 at 1:40). Officer Self told Chief Clifton that he saw someone coming from the woods and promptly drew his firearm as Self continued approaching. (*Id*.). With his firearm drawn, Officer Self yelled at Plaintiff, "let me see them hands." (*Id*. at 1:44). Plaintiff put his hands up and responded that he was not armed. (*Id*.); (Doc. # 2 ¶¶ 13-14). Self then asked what Plaintiff was doing and ordered him to get on the ground. (Doc. # 14-1 at 1:55). Plaintiff responded that he was supposed to be there and that he is not a crook. (*Id*.).

While Plaintiff was on the ground, Officer Self handcuffed him and informed him that he was being detained. (*Id*. at 2:30). Officer Self then ordered Plaintiff to stand up, and told him to "roll over onto [his] side and stand up." (*Id*.). As he was struggling to do so, Officer Self and Chief Clifton helped Plaintiff to his feet. (*Id*.). In his Complaint, Plaintiff alleges that he was "screaming" because, when the officers pulled him off the ground by his wrists, it caused him "excruciating pain." (Doc. # 2 ¶ 18). In reviewing the body cam footage, however, the court could not identify any screaming and clearly observed both officers helping Plaintiff up by his arms, not his wrists. (Doc. # 14-1 at 2:50). Chief Clifton explained why Plaintiff drew the officers' suspicion, and listed a series of traffic violations Plaintiff had committed. (*Id*. at 3:50). Clifton also noted that the garage door on the adjacent house was open, which suggested a possible break-in. (*Id*.).

Officer Self then ran Plaintiff's license and told him that they had to make sure everything checked out and that if it did, Plaintiff would be free to go. (*Id*.). Officer Self also mentioned that the shotgun in Plaintiff's truck contributed to the officers' suspicion and was the reason they approached him with their guns drawn. (*Id*. at 5:35). Plaintiff responded that he knows the owner of the property, that the owner of the property was aware that Plaintiff was using his property to bow hunt, and that the situation was upsetting to him. (*Id*. at 6:40). Officer Self then said that he was "sorry" that Plaintiff was upset, and in the video he appeared to loosen Plaintiff's handcuffs. (*Id*.).

Chief Clifton then approached Plaintiff and deescalated the encounter. (*Id*. at 8:30). He told Plaintiff that the officers believed him but that the only way for them to know that he was given permission to hunt on someone else's property is if he could present them with a signed document to that effect. (*Id*. at 8:30). As the situation was calming down, Chief Clifton asked Plaintiff if he understood why the officers were suspicious. (*Id*.). At that point, though, Officer Self interjected and said that Plaintiff did not understand, which began to escalate the encounter again. (*Id*. at 9:00). Chief Clifton then deescalated the conversation again, and released Plaintiff from his handcuffs. (*Id*. at 10:50).

When Plaintiff later obtained the police report of the incident, it contained what he contends were the following inaccuracies: (1) the encounter occurred at 4:00 A.M; (2) Clifton observed an older blue Chevrolet with no tag; (3) the vehicle was swerving; (4) the vehicle turned on the wrong side of a set of barriers; (5) the vehicle was blocking a public roadway; (6) the officers could not see Plaintiff well as he exited the woods; and (7) both officers drew their weapons. (Doc. # 2 at 7-8). The police report was signed by Chief Clifton and Sergeant Adamson, not by Officer Self. (Doc. # 2 ¶ 26). Plaintiff alleges that the misrepresentations were

included in the police report in order to "justify Clifton and Self's actions even though Self[] did not sign the report." (*Id*. ¶ 25).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if … there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the

complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Although the court must resolve all reasonable doubts in favor of the non-movant, this does not mean the court cannot rely on objective videotape evidence. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, if a videotape clearly depicts events and leaves no material factual disputes, the court need not rely on one party's version of facts when they are obviously discredited by that undisputed video evidence. *Id*. at 380–81.

### III.    Discussion

Plaintiff filed this action on November 4, 2022. (Doc. # 1). He amended his complaint on December 13, 2022. (Doc. # 2), and the amended pleading includes a total of twelve counts alleging certain federal and state claims. Plaintiff's federal claims, each asserted under § 1983, include: Unreasonable Search and Seizure against Clifton and Self (Count I); Excessive Force against Clifton and Self (Count II); Supervisory Liability against Clifton (Count III); Failure to Prevent Unconstitutional Arrest against Clifton (Count IV); and a claim of Municipal Liability against the City of Oneonta (Count V). (Doc. # 2 at 10-15). Plaintiff also brings various state law claims, which the court addresses briefly below, following its discussion of the federal claims.

On April 18, 2023, Defendants moved to dismiss each count of Plaintiff's Complaint. (Doc. # 13). Defendants attached body cam footage of the incident as an exhibit to their Motion. (Doc. # 14-1). Accordingly, the court provided notice that it would convert Defendants' Motion to Dismiss into a Motion for Summary Judgment in accordance with Federal Rule of Civil Procedure 12(d). (Doc. # 21). And, consistent with that notice, the court has converted Defendant's motion to dismiss into one for summary judgment.

### A.    Plaintiffs' Claims Under § 1983

Section 1983 "provides a method for vindicating federal rights conferred by the Constitution and federal statutes." *Proescher v. Bell*, 966 F. Supp. 2d 1350, 1359 (N.D. Ga. 2013) (citing *Baler v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  A plaintiff bringing a § 1983 claim must show "that the conduct complained of (1) was committed by a person acting under color of state law; and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id*. (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (internal quotes and citations omitted). Here, understandably, Defendants

do not contest that the officers were acting under color of law. So, the relevant question is whether they deprived Plaintiff of his constitutional rights.

### 1.   Unreasonable Search and Seizure Against Clifton and Self

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. amend. IV. A court must examine the "totality of the circumstances" to determine whether a search or seizure is reasonable under the Fourth Amendment. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (citing *Samson v. California*, 547 U.S. 843, 848 (2006)). A law enforcement officer may "seize" a person to conduct a brief investigation if "(1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

"Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene ... and is a question of law." *Evans v. Stephens*, 407 F.3d 1272, 1280 (11th Cir. 2005) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). The existence of "reasonable suspicion" is determined according to the totality of the circumstances. *Jordan*, 635 F.3d at 1186. At a minimum, reasonable suspicion requires "specific, articulable, and objective facts reasonably to suspect that a crime is being or will soon be committed … but is a less demanding standard than probable cause." *United States v. Babcock*, 924 F.3d 1180, 1187 (11th Cir. 2019) (citing *United States v. Puglisi*, 723 F.2d 779, 789 (11th Cir. 1984); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)) (quotations omitted).

Here, Defendants Self and Clifton had reasonable suspicion to detain Plaintiff. First, Chief Clifton identified a vehicle driving erratically and observed the vehicle make an improper turn onto a cross street. (Doc. # 14-1 at 3:50). Later, Chief Clifton came upon the truck again at the end of a cul-de-sac, adjacent to a home with the garage door open, suggesting a possible break-in. (*Id*.). As he and Officer Self inspected the truck, they noticed an unsecured shotgun in the cab. (*See id*. at 5:35). As they walked back towards the truck after knocking on the homeowner's door, they noticed a man emerging from the woods. (*Id*. at 1:40). This sequence of events unfolded in the early hours of the morning, in low visibility conditions. Based on these "specific, articulable, and objective facts," it was entirely reasonable for Clifton and Self to "suspect that a crime [was] being or [would] soon be committed." *Babcock*, 924 F.3d at 1187. Therefore, Clifton and Self had reasonable suspicion of unlawful activity, and their brief detention of Plaintiff while they verified whether he was allowed to be on the property was proper.

Moreover, the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *Jordan*, 635 F.3d at 1186. While Plaintiff was detained, Officer Self searched him for weapons and called in his license number. (Doc. # 14-1 at 3:50). As Officer Self did so, both officers assured Plaintiff that he would be free to go once everything checked out. (*Id*.). True to their word, Plaintiff was released within minutes, and officers suggested that in the future, Plaintiff obtain written permission from the property owner to bow hunt on the property. (*Id*. at 13:00). The officers detained Plaintiff because he had a shotgun in his truck and because, in light of all the circumstances, they reasonably suspected criminal behavior. However, once it became clear that Plaintiff was not a threat to their safety and was not engaging in criminal activity, he was promptly released. Because Chief Clifton and

Officer Self had a reasonable suspicion of criminal activity, and because Plaintiff's detention was reasonably related to the circumstances that initially justified it, there is no genuine issue of fact as to whether the officers subjected Plaintiff to an unreasonable search and seizure. *See Jordan*, 635 F.3d at 1186. Accordingly, Count One is due to be dismissed.

### 2. Excessive Force Against Clifton and Self

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). Whether the force used by an officer was excessive is "a pure question of law" for a court to decide. *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007)). "In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" *Id*. (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001)). Determining whether a use of force was reasonable requires the court to balance the "nature and quality" of the force used against the "countervailing government interests at stake." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted).

Defendants contend that Plaintiff's excessive force claim should be dismissed because the application of force was *de minimis*, and therefore fails as a matter of law. (Doc. # 14 at 14-17). To be sure, "the application of de minimis force, without more, will not support a claim for excessive force...." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). Moreover, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

physical coercion or threat thereof to effect it." *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (quoting *Graham*, 490 U.S. at 394) (internal quotations omitted).

Here, Plaintiff argues that Officer Self violated Plaintiff's constitutional protection against the use of excessive force by "forcing [Plaintiff] at gunpoint to lay face down on the pavement, placing him in handcuffs, and searching him without a warrant or probable cause to do so." (Doc. # 2 ¶ 40). As an initial matter, Plaintiff's assertion that Self used excessive force by conducting a warrantless search is off the mark. An unreasonable search is a distinct cause of action, separate and apart from the use of excessive force.[2] So, the court considers whether Officer Self engaged in excessive force by (1) ordering Plaintiff to the ground at gunpoint; or (2) handcuffing Plaintiff while he was on the ground.

First, Officer Self did not engage in excessive force by drawing his firearm and ordering Plaintiff to the ground. The Eleventh Circuit has held that "[o]fficers are permitted to draw weapons 'when approaching and holding individuals for an investigatory stop ... when reasonably necessary for protecting an officer or maintaining order.'" *Jones v. Walsh*, 711 F. App'x 504, 507 (11th Cir. 2017) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1494-95 (11th Cir. 1991)). After finding an unsecured shotgun in Plaintiff's truck, Officer Self ordered Plaintiff to the ground and pointed his firearm at Plaintiff only until he could get Plaintiff handcuffed and ensure that he was unarmed. (Doc. # 14-1 at 2:00; 5:30). Such conduct fits squarely within the bounds of permissible law enforcement behavior the Eleventh Circuit identified in *Courson* and reaffirmed in *Jones*.

Next, Officer Self did not engage in excessive force by handcuffing Plaintiff. "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are

---

[2] The court addressed Plaintiff's unreasonable search claim above. It is unnecessary to rehash that analysis here.

minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002); *see also Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (holding that an officer did not engage in excessive force by handcuffing a suspect for roughly twenty minutes, which resulted in skin abrasions for which the suspect did not seek medical treatment). Here, there is no indication that Plaintiff suffered *any* injury from the handcuffing, much less any minimal injury. Moreover, Plaintiff was only handcuffed for roughly eight minutes. (Doc. # 14-1 at 2:20-11:00). Therefore, the force used in handcuffing Plaintiff was clearly de minimis and not excessive. Accordingly, because Officer Self did not engage in excessive force by ordering Plaintiff to the ground at gunpoint or by handcuffing him, Count Two is due to be dismissed.

### 3. Qualified Immunity

Alternatively, even if Plaintiff could otherwise advance his claims here, Officer Self and Clifton are entitled to qualified immunity. *See Pace v. Capobianco*, 283 F.3d 1275, 1282-83 (11th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An officer is entitled to qualified immunity unless (1) he has committed a constitutional violation; <u>and</u> (2) that the constitutional right was "clearly established" at the time of the officer's alleged misconduct. *Id*. at 232 (holding that a court may consider these two prongs in any order, as opposed to the rigid two-step process outlined in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, as noted above, Officers Self and Clifton did not subject Plaintiff to an unreasonable search and seizure. Nor did the officers engage in excessive force when they

ordered Plaintiff to the ground and handcuffed him. Therefore, the officers did not commit a constitutional violation in their encounter with Plaintiff. Because the officers did not commit a constitutional violation, Plaintiff cannot establish the first element required to defeat qualified immunity. *Pearson*, 555 U.S. at 232. Moreover, in light of the circumstances the officers were faced with, Plaintiff cannot show that his right not to be handcuffed, detained, and questioned was clearly established at the time of the incident. *See Johnson v. Conway*, 688 F. App'x 700, 707-08 (11th Cir. 2017) (holding that no "broad principle[] of law" clearly established a constitutional protection against the conduct of officers who bent a suspect's arm all the way back and dragged him for failure to comply with their orders). Accordingly, Counts One and Two are also due to be dismissed because the officers are entitled to qualified immunity.

### 4.    Supervisory Liability and Failure to Prevent Unconstitutional Arrest

In this Circuit, "supervisory liability under § 1983 occurs only when 'the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" *Leitgeb v. Kelley*, 510 F. Supp. 2d 1227, 234 (N.D. Ga. 2007) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003)) *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010); *Figures v. Gordon*, No. 22-12121, 2023 WL 352707, at \*2 (11th Cir. Jan. 23, 2023). Further, "in order for an officer to be liable for failing to stop another officer's unconstitutional use of … force, the officer must be in a position to intervene." *Jackson v. Sauls*, 206 F.3d 1156, 1174 (11th Cir. 2000).

Here, as detailed above, Officer Self did not engage in any unconstitutional conduct. Because there was no underlying constitutional violation, Chief Clifton cannot be held liable for

failing to supervise or to prevent unconstitutional conduct. Therefore, Counts Three and Four are due to be dismissed.

### 5.    Municipal Liability Under *Monell*

A municipality may only be held liable for a constitutional violation committed by an officer in its employ when the officer's allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Serv. Of City of New York*, 436 U.S. 658, 690 (1978). In other words, to establish a claim under *Monell*, a plaintiff must point to a municipality's policy or custom that resulted in a constitutional violation by one of its officers. *Id*. at 690-91. In keeping with the legislative intent of § 1983, "[t]his high standard of proof is intentionally onerous for plaintiffs." *Gold*, 151 F.3d at 1351 n. 10.

Here, Plaintiff's *Monell* claim fails as a matter of law because, as discussed above, the officers did not commit a constitutional violation. "There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight through Kerr v. Miami-Dade Cty*., 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Thus, because Plaintiff suffered no constitutional injury at the hands of Chief Clifton or Officer Self, the City of Oneonta cannot be held liable for propagating or failing to propagate a policy or custom that caused a constitutional violation. *See id*. (citing *Miller v. Harget*, 458 F.3d 1251, 1261 (11th Cir. 2006)). Further, and in any event, even if Plaintiff could establish a constitutional violation (and, again, he cannot), he has not made any showing that some policy or custom of the city resulted in a constitutional violation regarding Plaintiff.  Accordingly, Count Five is due to be dismissed.

6.        **Plaintiff's Evidence Submitted on June 9, 2023.**

On June 9, 2023, Plaintiff submitted several affidavits as well as videos and photographs that he insisted countered the body camera footage and other claims made by Defendants. (Doc. # 26). Included in this submission were affidavits from Plaintiff, his wife, his thirteen-year-old daughter, his mother, and his father. (*Id.*). After careful review, the court finds that none of Plaintiff's proffered evidence creates a genuine dispute of material fact as to the constitutionality of Defendants' conduct.

C.        **State Law Claims**

In addition to Plaintiff's federal claims under § 1983, he brings state law claims of negligence and wantonness (Count VI); false imprisonment (Count VII); respondeat superior (Count VIII); assault (Count IX); and conspiracy (Count X). (Doc. # 2 at 15-19). Plaintiff also seeks a declaratory judgment that he is entitled to certain police records, and an order compelling Oneonta to produce them (Count XII). (*Id*. at 19-22). Finally, Plaintiff's wife, Angela, brings one count for loss of consortium (Count XII). (*Id*. at 19).

It is well settled in this Circuit that "state courts, not federal courts, should be the final arbiters of state law." *Ingram v. School Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). Indeed, "there is a very strong argument for dismissal [of state law claims], especially where the federal claims are dismissed prior to trial." *Id*. (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Moreover, "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Id*. at 108-09 (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)). Therefore, "when the federal-law claims have dropped out of the

lawsuit in its early stages and only state-law claims remain, the federal court <u>should</u> decline the exercise of jurisdiction by dismissing the case without prejudice." *Eubanks v. Gerwen*, 40 F.3d 1157, 1161-62 (11th Cir. 1994) (emphasis added) (holding that federal claims dismissed at the summary judgment stage have been "disposed of rather early on") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, because Plaintiff's federal claims are due to be dismissed, and because Plaintiff has not alleged any independent basis for subject matter jurisdiction over his state law claims, the court declines to exercise jurisdiction over those claims. Plaintiff may timely refile those claims in state court.

## IV.    Conclusion

For the reasons outlined above, Plaintiff's federal claims under § 1983 are due to be dismissed. Further, the court declines to exercise jurisdiction over Plaintiff's remaining state law claims. A separate order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this June 27, 2023.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE